IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROMANUCCI & BLANDIN, LLC, and ANTHONY COLLARO, | ) ) ) | Case No. 16 C 9710 |
| Appellants, v. SPIRO LEMPESIS, Appellee. | ) ) ) ) ) ) ) ) | On Appeal from the United States Bankruptcy Court for the Northern District of Illinois No. 13 B 38995 Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Appellants Romanucci & Blandin, LLC ("R&B") and Anthony Collaro ("Collaro") appeal from an order of the United States Bankruptcy Court for the Northern District of Illinois entered on September 28, 2016, awarding sanctions to debtor Spiro Lempesis ("Lempesis") for appellants' violation of Lempesis' discharge injunction. Appellants also appeal the denial of appellants' Motions in Limine, entered on September 28, 2016. For the reasons below, the decision of the bankruptcy court is affirmed in part and reversed in part.

**FACTS**

On May 14, 2013, Collaro, through his attorneys, R&B, filed a lawsuit against Lempesis and Concordia University Chicago in the Circuit Court of Cook County (the "First Lawsuit"). The First Lawsuit alleged claims of fraud and breach of contract against Lempesis, stemming from Lempesis' alleged sexual exploitation of Collaro while Lempesis was his baseball coach at Concordia. On October 3, 2013, Lempesis filed for relief under chapter 7 of the Bankruptcy Code and listed Collaro on Schedule F as a creditor with an unliquidated and disputed claim, in the form of the First Lawsuit.

On October 6, 2013, the Bankruptcy Notification Center mailed notice of Lempesis' bankruptcy to creditors, including Collaro in care of R&B, at the firm's LaSalle Street address in Chicago, as listed on the complaint in the First Lawsuit. On October 30, 2013, the notice sent to the R&B's LaSalle Street address was returned to sender because R&B had moved its office since the complaint was filed in the First Lawsuit. On November 4, 2013, upon discovering that R&B no longer occupied the LaSalle Street address, Lempesis' attorney mailed a copy of the bankruptcy notice to R&B's new address and sent the notice via facsimile to R&B with attention to attorney Rebekah Williams ("Williams"), the lead associate assigned to Collaro's state court case. R&B admits it received the faxed notice, but claims that Williams left R&B without informing anyone of the notice. Both the mailed and faxed bankruptcy notice contained a warning about the automatic stay and provided that the deadline to object to Lempesis' discharge or to challenge the discharge of certain debts was January 17, 2014.

On January 21, 2014, Lempesis' discharge order was entered and notice was sent to all creditors on the same date. Prior to discharge, R&B did not attempt to lift the automatic stay in Lempesis' bankruptcy or challenge the dischargeability of Collaro's claim. The certificate of service for the discharge order indicates that the notice was sent to R&B's old address on LaSalle Street. The bankruptcy case was closed on February 25, 2014.

Also on January 21, 2014, Lempesis filed his pro se answer in the First Lawsuit. In his answer, Lempesis referred to his bankruptcy case, including the case number. Lempesis also referred to the discharge, but incorrectly stated that the "discharge date is Nov. 18." Lempesis mailed a copy of his answer to R&B via certified mail, but did not pay to receive a return receipt.

2

On April 3, 2014, Collaro, through R&B, voluntarily dismissed the First Lawsuit. On December 30, 2014, Collaro, through R&B, filed another lawsuit against Lempesis and Concordia University in the Circuit Court of Cook County (the "Second Lawsuit"). The Second Lawsuit contained the same allegations as the First Lawsuit, as well as new allegations that Lempesis had sexually abused Collaro when Collaro was a minor.

On February 20, 2015, Lempesis moved to reopen his bankruptcy case and brought a motion for an order of civil contempt against R&B and Collaro. Lempesis argued that R&B and Collaro had violated the discharge injunction by failing to dismiss the First Lawsuit timely and by filing the Second Lawsuit. Lempesis requested sanctions in the form of damages for emotional distress, punitive damages, out-of-pocket expenses, as well as attorney's fees and court costs. The bankruptcy court granted Lempesis' motion to reopen the case and the motion for sanctions was set for trial on November 2, 2015.

On February 25, 2015, upon receiving the notice of Lempesis' motion for sanctions, R&B stayed the Second Lawsuit. After the Second Lawsuit was stayed, R&B amended the complaint, alleging five counts against Lempesis personally. On April 10, 2015, Collaro and R&B's managing partner, Anthony Romanucci ("Romanucci"), appeared in a broadcast televised interview regarding allegations made against Lempesis in the Second Lawsuit.

On October 26, 2015, R&B filed a motion in limine in the sanctions proceeding seeking to bar evidence relating to punitive damages and damages for emotional distress and humiliation. R&B argued that punitive damages are not available in an action for civil contempt, and permissible remedies for violation of the discharge injunction do not include damages for emotional distress and humiliation. The bankruptcy court reserved ruling on the motion.

3

On November 2, 2015, the bankruptcy court held the trial, at which it heard testimony from Lempesis on behalf of himself and Romanucci on behalf of R&B. Lempesis testified about notice of the bankruptcy filing and the discharge order and his claimed damages. Romanucci testified about the structure of R&B, the firm's receipt of notice for Lempesis' bankruptcy, and R&B's actions in the First Lawsuit and Second Lawsuit.

On September 28, 2016, the bankruptcy court issued its Memorandum Opinion, holding that Collaro and R&B had willfully violated the automatic stay and the discharge order. The court initially awarded damages for out-of-pocket expenses in the amount of $174, attorneys' fees in the amount of $10,958.75, emotional distress in the amount of $12,000, and punitive damages against R&B only in the amount of $50,000. The court also denied R&B and Collaro's Motions in Limine seeking to bar evidence of emotional distress and punitive damages. After Lempesis' filed a Supplemental Statement of Attorneys' Fees, the court awarded additional attorneys' fees in the amount of $16,362.50 and $379 in costs.

On October 27, 2016, the bankruptcy court entered its final "Order of Judgment Granting Motion for Sanctions and Awarding Actual and Punitive Damages," which awarded damages for out-of-pocket expenses in the amount of $174, attorneys' fees in the amount of $28,670.26, emotional distress in the amount of $12,000, and punitive damages against R&B only in the amount of $50,000. This appeal followed.

## **STANDARD OF REVIEW**

This court has jurisdiction over the bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1). On appeal, this court reviews factual findings for clear error and conclusions of law de novo. Stamat v. Neary, 635 F.3d 974, 979 (7th Cir. 2011). For factual findings, the court reviews

4

whether "the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety." Id. "A bankruptcy court's determination regarding 'notice' is treated as a fact for the purpose of appellate review." Matter of Barnes, 969 F.2d 526, 528 (7th Cir. 1992). A bankruptcy court's finding of civil contempt is reviewed for abuse of discretion. In re Taylor, 793 F.3d 814, 818 (7th Cir. 2015). The finding of civil contempt will be reversed only when it "depends on faulty legal premises [or] clearly erroneous factual findings." Id.

## DISCUSSION

Appellants argue that the bankruptcy court erred by: (1) finding that Appellants received proper notice of Lempesis' bankruptcy and discharge; (2) finding that R&B was aware that the discharge injunction applied to Collaro's claims; (3) awarding substantial attorneys' fees; (4) denying appellants' Motion in Limine seeking to bar evidence of emotional distress and awarding damages for emotional distress; and (5) denying appellants' Motion in Limine seeking to bar evidence of punitive damages and awarding punitive damages. This court addresses each issue in turn.

**I.   Whether the Bankruptcy Court Erred by Finding that Appellants Received Proper Notice of the Bankruptcy and Discharge**

Appellants argue that the bankruptcy court erred in finding that they received proper notice of Lempesis' bankruptcy and discharge. Appellants contend that the bankruptcy court incorrectly "presumed" or "imputed" notice of the bankruptcy or, in the alternative, that appellants received notice only of Lempesis' bankruptcy, but not the discharge. Appellants cite In re Zilog, Inc., 450 F.3d 996, 1008 (9th Cir. 2006), for the proposition that only actual knowledge of the discharge injunction suffices for a finding of contempt.

5

Appellants are correct that a bankruptcy court may hold a creditor in contempt only for a "willful" violation of the automatic stay or discharge injunction, and "[w]illfulness entails actual knowledge that a bankruptcy is under way or has ended in a discharge." Randolph v. IMBS, Inc., 368 F.3d 726, 728 (7th Cir. 2004). The actual holding of In re Zilog, however, is that "knowledge of the [discharge] injunction is a question of fact that can normally be resolved only after an evidentiary hearing." In re Zilog, Inc., 450 F.3d at 1007. The court explained that "[i]t is certainly true that a trier of fact could infer knowledge of an automatic stay or discharge injunction from the fact that a creditor knew of the bankruptcy," but "[s]uch an inference… would be a matter of fact." Id. at 1008.

In the instant case, the bankruptcy court held a trial at which the court heard testimony from both Lempesis and Romanucci regarding the issue of whether appellants received proper notice and therefore had knowledge of the bankruptcy and discharge. Romanucci admitted that R&B received a faxed notice of Lempesis' bankruptcy in November 2013, which referenced the approximate date of discharge, but claimed that the fax was received by associate attorney Williams, who left the firm without telling anyone at R&B about the notice. Lempesis testified that he mailed his answer to the First Lawsuit to R&B on January 21, 2014, indicating that Lempesis was in bankruptcy and referencing the "discharge date," albeit providing the wrong date. Romanucci testified that as the partner in charge of the case against Lempesis, he was responsible for reviewing answers that were filed to their complaints.

The bankruptcy court did not "presume" or "impute" R&B with knowledge of the bankruptcy or discharge. Rather, Romanucci admitted that R&B received notice of the bankruptcy, and the court was capable of finding that R&B had actual knowledge of the

discharge, based upon the testimony and evidence presented at the trial. In re Zilog, 450 F.3d at 1008. The court was not obligated to accept Romanucci's testimony that R&B did not have knowledge of the discharge until receiving Lempesis' motion for sanctions. In re Mussa, 215 B.R. 158, 166 (Bankr. N.D. Ill. 1997) ("it is up to the [bankruptcy court] as trier of fact to weigh evidence and evaluate the credibility of the witnesses"). Further, the bankruptcy court held that R&B violated the discharge injunction even after receiving Lempesis' motion for sanctions, which clearly provided notice of the discharge. Consequently, this court concludes that the bankruptcy court did not commit clear error when it found that R&B received proper notice of the bankruptcy and discharge. Neary, 635 F.3d at 979.

The issue of whether Collaro received proper notice must be considered separately. The bankruptcy court held that notice was imputed to Collaro because R&B was representing Collaro in the state court litigation. This court disagrees. In finding that notice was imputed to Collaro, the bankruptcy court relied on In re Herman, 737 F.3d 449, 453 (7th Cir. 2013), in which the Seventh Circuit held that notice could be imputed from an attorney to a client-creditor for the purposes of deciding whether to provide for the exemption of a debtor's discharge under 11 U.S.C. § 523(a). Notice of the discharge may not be imputed, however, when deciding whether to hold a creditor in civil contempt for violating the discharge injunction. In re Taggart, 548 B.R. 275, 287 (B.A.P. 9th Cir. 2016). Thus, the court must determine, as a matter of fact, that the creditor had actual knowledge of the discharge. In re Zilog, Inc., 450 F.3d at 1007.

In the instant case, the bankruptcy court did not find as a matter of fact that Collaro had actual knowledge of Lempesis' bankruptcy or discharge, but rather imputed notice to Collaro through R&B. Consequently, the bankruptcy court could not have found that Collaro willfully

7

violated the automatic stay or discharge injunction without also finding that Collaro had actual knowledge of the bankruptcy and discharge. Randolph, 368 F.3d at 728; In re Zilog, Inc., 450 F.3d at 1007. Therefore, this court reverses the bankruptcy court's finding of civil contempt against Collaro.

II. **Whether the Bankruptcy Court Erred by Finding that R&B was Aware That the Discharge Injunction Applied to Collaro's Claims**

Appellants argue that the bankruptcy court erred in finding that appellants violated the discharge injunction, because appellants did not know that the discharge injunction applied to Collaro's claims against Lempesis. According to appellants, in addition to having notice of the discharge, an alleged contemnor must also be aware that the injunction applies to his claims, and that a creditor's subjective belief that the injunction does not apply to creditor's claim bars an action for sanctions. In re Taggart, 548 B.R. at 288. Appellants contend that the bankruptcy court disregarded R&B's argument that Collaro's claims were not discharged and Romanucci's testimony that he is not a bankruptcy attorney.

To prove that a discharge injunction has been violated, "the debtor must show that the creditor acted intentionally, with knowledge that his act was in violation of the automatic stay [or injunction]." Connor v. JP Morgan Chase Bank, N.A., No. 15 C 8601, 2016 WL 7201189, at *4 (N.D. Ill. Mar. 22, 2016) (citing In re Barr, 457 B.R. 733, 735 (Bankr. N.D. Ill. 2011)). In the instant case, the bankruptcy court found that appellants' violations of the automatic stay and discharge injunction were "in total disregard of the [Bankruptcy] Code." The court reached this conclusion after hearing testimony from Romanucci indicating that he understood R&B would have to lift the automatic stay once a bankruptcy was filed in order to proceed with claims against the debtor. Further, appellants offer no explanation to this court as to why R&B believed

8

that the discharge did not apply to Collaro's claims. In re Kewanee Boiler Corp., 297 B.R. 720, 737 (Bankr. N.D. Ill. 2003) (denying debtor's claim for contempt sanctions when creditor "had a good faith and colorable basis for asserting that there had been no discharge" and therefore debtor had "not proven any violation of the discharge injunction let alone a willful violation"). Therefore, this court concludes that the bankruptcy court did not abuse its discretion by finding that R&B was aware that the discharge applied to Collaro's claims against Lempesis.

### III. Whether the Bankruptcy Court Erred by Awarding Substantial Attorneys' Fees

Appellants argue that the bankruptcy court erred in awarding substantial attorneys' fees because Lempesis failed to mitigate his damages. Citing In re Mitchell, 545 B.R. 209, 220 (Bankr. N.D. Ohio 2016), for the proposition that "debtors have an obligation to attempt to mitigate damages prior to seeking court intervention," appellants contend that Lempesis could have avoided substantial attorneys' fees had he contacted R&B immediately following the filing of the Second Lawsuit to inform appellants that they were violating the discharge injunction. According to appellants, Lempesis instead "laid in wait" for two months after the filing the Second Lawsuit and then filed his motion for sanctions.

Appellants' argument disregards that they continued to pursue Lempesis in the Second Lawsuit even after Lempesis filed his motion for sanctions. Appellants stayed the Second Lawsuit in state court after the motion for sanctions was filed instead of dismissing Lempesis. Thereafter, appellants amended the complaint, keeping Lempesis as a named party. Appellants appeared in a broadcast televised interview regarding the Second Lawsuit after the motion for sanctions was filed, which the bankruptcy court found was a further attempt to collect Lempesis' discharged debt. Appellants also filed a response to the sanctions motion, in which they argued

9

that Collaro's claims were non-dischargeable. Based on these facts, the bankruptcy court found that it was unclear "how a phone call would have short circuited the litigation." This court agrees. The record does not support appellants' assertion that they would have stayed or dismissed the Second Lawsuit, thus avoiding Lempesis' motion for sanctions, based on a phone call or letter from Lempesis providing notice that the Second Lawsuit violated the discharge injunction. Therefore, this court concludes that the bankruptcy court did not abuse its discretion in awarding Lempesis the attorneys' fees that he requested.

Appellants also argue that it is unclear how the bankruptcy court awarded a total of $28,670.26 in attorneys' fees and costs. The bankruptcy court's initial order awarded $10,958.75 of attorneys' fees, and Lempesis requested an additional $16,362.50 in attorneys' fees and $379 in costs by way of a Supplemental Petition, totaling $27,700.25. This court concludes that the bankruptcy court's award of attorneys' fees and costs should be reduced to reflect the amount requested by Lempesis, totaling $27,700.25.

**IV.     Whether the Bankruptcy Court Erred by Denying Appellants' Motion In Limine and Awarding Damages for Emotional Distress**

Appellants first argue that the bankruptcy court erred as a matter of law in denying their Motion in Limine seeking to bar evidence of emotional distress and awarding emotional distress damages. Appellants cite McBride v. Coleman, 955 F.2d 571, 577 (8th Cir. 1992), for the proposition that civil contempt is not "an appropriate vehicle for awarding damages for emotional distress." This court disagrees.

In the instant case, the bankruptcy court relied on Aiello v. Providian Fin. Corp., 239 F.3d 876, 880 (7th Cir. 2001), in which the Seventh Circuit held that bankruptcy courts may award emotional distress damages as compensation for violations of the automatic stay, but only

10

if the debtor also shows a financial loss. Id. at 881 (holding that debtor was not entitled to emotional distress damages, because debtor failed to also allege a financial loss). The court in *Aiello* reasoned that those debtors seeking only emotional distress damages for violation of the automatic stay may file suit in state court, but the "interest in judicial economy, as embodied in the 'clean-up' doctrine of equity, might allow the court to 'top off' relief designed to redress any financial injury inflicted by the violation of the automatic stay with an award of damages for incidental harms, perhaps including emotional distress if adequately proved, to spare the debtor from having to bring two suits." Id. at 880-881.

Appellants attempt to distinguish Aiello, on the grounds that the case dealt with violations of the automatic stay rather than violations of the discharge injunction. Appellants' argument, however, ignores that the discharge injunction is a continuation of the automatic stay. Aiello, 239 F.3d at 878 ("[t]he 'automatic stay' is a statutory injunction against efforts outside of bankruptcy to collect debts from a debtor who is under the protection of the bankruptcy court"); 11 U.S.C. § 524(a)(2) (the discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor"). Moreover, bankruptcy courts have the authority to award remedial and compensatory damages in the form of sanctions for violations of the discharge injunction. In re Andrus, 184 B.R. 311, 315 (Bankr. N.D. Ill.), aff'd, 189 B.R. 413 (N.D. Ill. 1995). Therefore, emotional distress damages, which are compensatory in nature, should be available as sanctions for a violation of the discharge injunction. In re Nordlund, 494 B.R. 507, 522 (Bankr. E.D. Cal. 2011) (awarding emotional distress damages for a violation of the discharge injunction). Consequently, this court concludes that the bankruptcy court did not

err as a matter of law in denying appellants' Motion in Limine and awarding emotional distress damages to Lempesis, when Lempesis alleged a financial loss in addition to emotional distress damages. Aiello, 239 F.3d at 880-881.

Appellants next argue that even if emotional distress damages are recoverable for violations of the discharge injunction, Lempesis failed to provide evidence which entitled him to an award of such damages. The Seventh Circuit has held that "[w]hen the injured party provides the only evidence of emotional distress, he must reasonably and sufficiently explain the circumstances of the injury rather than relying on mere conclusory statements." Alston v. King, 231 F.3d 383, 388 (7th Cir. 2000). Further, the claimant must show "'demonstrable emotional distress,' not just point to circumstances of the… violation which might support an inference of such injury." Id.

In the instant case, the bankruptcy court heard testimony in which Lempesis described a relentless pursuit and threats in the media after the Second Lawsuit was filed, resulting in Lempesis' loss of work hours and embarrassment at Lempesis' place of employment. Thus, Lempesis showed "demonstrable emotional distress," rather than "relying on mere conclusory statements." Id.

Appellants also argue that Lempesis failed to prove the required "causal connection between the emotional distress and the creditor's violation of the discharge injunction." In re Nibbelink, 403 B.R. 113, 121 (Bankr. M.D. Fla. 2009). According to appellants, Lempesis would have experienced emotional distress regardless of whether appellants filed the Second Lawsuit, because the media attention was created by the First Lawsuit, which appellants brought previous to Lempesis filing bankruptcy. Appellants also contend that they could have brought

the Second Lawsuit against Concordia University alone, causing the same amount of emotional distress for Lempesis, but without violating the discharge injunction.

Appellants' argument fails because it ignores Lempesis' testimony that the Second Lawsuit *revived* interest in Collaro's claims against Lempesis, more than eight months after the first lawsuit was dismissed. Further, the Second Lawsuit was not filed against Concordia University alone, but named Lempesis personally as a defendant, in violation of the discharge injunction. Even if appellants are correct that the revived media attention would have resulted regardless of Lempesis being named as a defendant in the Second Lawsuit, this does not break the chain of causation between appellants' violation of the discharge injunction and Lempesis' emotional distress. Thus, this court concludes that the bankruptcy court did not abuse its discretion in awarding emotional distress damages to Lempesis.

**V.     Whether the Bankruptcy Court Erred by Denying Appellants' Motion In Limine and Awarding Punitive Damages**

R&B argues that the bankruptcy court erred as a matter of law in denying its Motion in Limine and awarding Lempesis punitive damages because bankruptcy courts do not have the authority to award punitive damages for violations of a discharge injunction. R&B cites numerous cases in support of its argument: In re Torres, 117 B.R. 379, 382 (Bankr. N.D. Ill. 1990) (discussing that sanctions for violation of the discharge injunction "can be remedial and compensatory but not punitive"); In re Feldmeier, 335 B.R. 807, 812 (Bankr. D. Or. 2005) (holding bankruptcy courts do not have the power to award punitive damages for violations of the discharge injunction); In re Nordlund, 494 B.R. 507, 521 (Bankr. E.D. Cal. 2011) (stating that bankruptcy courts may "not award 'serious punitive penalties' for a violation of the discharge injunction").

13

In the instant case, the bankruptcy court primarily relied on In re Vazquez in awarding punitive damages to Lempesis. 221 B.R. 222, 227 (Bankr. N.D. Ill. 1998). In that case, the court awarded punitive damages under 11 U.S.C. § 105 for a "particularly egregious" violation of the discharge injunction. Id. at 231. Section 105(a) provides that bankruptcy courts "may issue *any* order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." 11 U.S.C. § 105 (emphasis added). Thus, numerous courts have held that bankruptcy courts have the power under Section 105(a) to punish creditors for violations of the discharge injunction through the award of punitive damages: In re Perviz, 302 B.R. 357, 372 (Bankr. N.D. Ohio 2003) (holding that "punitive damages are… appropriate where there is some sort of nefarious or otherwise malevolent conduct"); Matter of Arnold, 206 B.R. 560, 568 (Bankr. N.D. Ala. 1997) (holding that debtor was entitled to punitive damages when creditor "acted willfully in clear disregard and disrespect of the bankruptcy laws with malicious intent"); In re Cherry, 247 B.R. 176, 190 (Bankr. E.D. Va. 2000) (stating that the bankruptcy court must find "creditor conduct beyond willfulness or deliberation and more closely resembling a specific intent to violate the discharge injunction in order to assess punitive damages").

The Seventh Circuit has stated that "[t]he victim of a violation of the statutory [discharge] injunction might… be able to obtain punitive damages, though presumably only if he could prove criminal contempt, since punishment is the purpose of criminal but not of civil contempt." Cox v. Zale Delaware, Inc., 239 F.3d 910, 916 ((7th Cir. 2001)(citations omitted). Further, Congress has expressly granted bankruptcy courts with the power to award punitive damages for violations of the automatic stay, and both the automatic stay and discharge injunction serve to prevent the attempted collection of prepetition debts. 11 U.S.C.A. §

362(k)(1) ("an individual injured by any willful violation of a stay provided by this section shall recover actual damages… and, in appropriate circumstances, may recover punitive damages"); 11 U.S.C. § 524(a)(2); Aiello, 239 F.3d at 878. Thus, this court concludes that the bankruptcy court did not err as a matter of law in denying appellants' Motion in Limine seeking to bar evidence of punitive damages and awarding Lempesis punitive damages. In re Vazquez, 221 B.R. at 227; In re Castle Home Builders, Inc., 520 B.R. 98, 109 (Bankr. N.D. Ill. 2014) (stating that "[w]here a creditor is found to have violated the discharge injunction, the court may impose punitive damages").

R&B next argues that even if the bankruptcy had the authority to award punitive damages, the court erred in awarding $50,000 in punitive damages because R&B did not act with malicious intent. Bankruptcy courts may award punitive damages "in response to particularly egregious conduct" that violates the discharge injunction. In re Vazquez, 221 B.R. at 231. "[P]unitive sanctions for violations of the discharge injunction require actions taken with either a malevolent intent or a clear disregard and disrespect of the bankruptcy laws and… it is not sufficient to merely show that the actions were deliberate." Id. "Relevant factors that may be considered in determining whether punitive damages are appropriate for a creditor's violation of the [discharge injunction] are: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." Id.

In the instant case, the bankruptcy court held that R&B's conduct was egregious because R&B "was not an ordinary creditor acting through ignorance," but rather "[t]hese were lawyers disregarding the Bankruptcy Code." R&B asserts that its violation of the discharge injunction was at worst "a mistake," but the bankruptcy court found that R&B received proper notice of

15

both the bankruptcy and discharge injunction, and violated the discharge injunction on three different occasions, even after receiving Lempesis' motion for sanctions. The bankruptcy court further found that Romanucci's testimony established that R&B would be able to pay the punitive damages requested, R&B's motive in violating the discharge injunction was to collect money from Lempesis, and Lempesis did nothing to provoke R&B's conduct. The bankruptcy court's findings were consistent with the factors necessary for awarding punitive damages. In re Vazquez, 221 B.R. at 231. Finally, the bankruptcy court's award of $50,000 in punitive damages is not excessive when compared to the compensatory damages and attorneys' fees awarded to Lempesis, totaling $40,844.26. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 426 (2003) (holding that "courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered"). Therefore, this court concludes that the bankruptcy court did not abuse its discretion in awarding $50,000 in punitive damages to Lempesis.

## CONCLUSION

The bankruptcy court did not err by: finding that R&B received proper notice of the bankruptcy and discharge injunction; finding that R&B was aware that the discharge applied to Collaro's claims against Lempesis; awarding Lempesis attorneys' fees, although the total amount of attorneys' fees and costs is reduced to $27,700.25; denying appellants' Motions in Limine seeking to bar evidence of punitive damages and emotional distress damages; awarding emotional distress damages; and awarding punitive damages. The bankruptcy court erred in finding that Collaro had proper notice of the bankruptcy and discharge, and therefore the

16

bankruptcy court's finding of civil contempt against Collaro is reversed. This case is remanded to the bankruptcy court for proceedings consistent with this opinion.

**ENTER:** May 4, 2017

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　**Robert W. Gettleman**
　　　　　　　　　　　　　　　　　**United States District Judge**